Approved: _____
ANDREW JONES
Assistant United States Attorney

Before:   THE HONORABLE KATHARINE H. PARKER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :        20 Mag._____
                                    :
        - v. -                      :        RULE 5(c)(3)
                                    :        AFFIDAVIT
BRADLEY CARL REIFLER,               :
                                    :
                Defendant.          :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss:

        KEITH NUSBAUM, being duly sworn, deposes and says that
he is a United States Postal Inspector, and charges as follows:

        On or about December, 2 2020, the United States
District Court for the Middle District of North Carolina issued
a warrant for the arrest of "Bradley Carl Reifler" based on an
indictment charging "Bradley Carl Reifler" with four counts of
violating 18 U.S.C. §§ 1343 and 2 (wire fraud) and one count of
violating 18 U.S.C. § 1621 (perjury). A copy of the arrest
warrant and the indictment are attached as Exhibit A hereto and
incorporated by reference herein.

        I believe that BRADLEY CARL REIFLER, the defendant, who
was arrested on December 2, 2020, in the Southern District of
New York, is the same person as the "Bradley Carl Reifler" who
is wanted by the United States District Court for the Middle
District of North Carolina.

        The bases for my knowledge and for the foregoing
charge are, in part, as follows:

        1.   I am a United States Postal Inspector. I have
been personally involved in the investigation described above
that resulted in the five-count indictment and arrest warrant in
the Middle District of North Carolina. Further, I have been
personally involved in determining whether BRADLEY CARL REIFLER,
the defendant, is the same individual as the "Bradley Carl

Reifler" named in the December 2, 2020 arrest warrant from the United States District Court for the Middle District of North Carolina. Because this affidavit is being submitted for the limited purpose of establishing the identity of the defendant, I have not included in this affidavit each and every fact that I have learned. Where I report statements made by others, those statements are described in substance and in part, unless otherwise noted.

2.     Based on my personal involvement in the investigation and review of documents from proceedings in the United States District Court for the Middle District of North Carolina, I know that, on or about December 2, 2020, the United States District Court for the Middle District of North Carolina issued a warrant for the arrest of "Bradley Carl Reifler" (the "Arrest Warrant"). The Arrest Warrant was based on a criminal indictment charging "Bradley Carl Reifler" with four counts of violating 18 U.S.C. §§ 1343 and 2 (wire fraud) and one count of violating 18 U.S.C. § 1621 (perjury). The Indictment was issued in connection with case number 20-cr-512 in the Middle District of North Carolina.

3.     On December 3, 2020, at approximately 6:35 a.m., I arrested BRADLEY CARL REIFLER, the defendant, at his apartment, in New York, New York (the "Apartment"). The defendant identified himself as "Bradley Reifler."

4.     Based on my involvement in this investigation, including a review of law enforcement databases and court filings in related civil matters, I know that the "Bradley Carl Reifler" sought in the Arrest Warrant resides at the Apartment.

5.     During the course of my investigation, using law enforcement databases, I have reviewed photographs of the "Bradley Carl Reifler" sought in the Arrest Warrant. The appearance of BRADLEY CARL REIFLER, the defendant, matches the appearance of the "Bradley Carl Reifler" I have viewed in photographs.

6.    Based on the fact that BRADLEY CARL REIFLER, the defendant, self-identified as "Bradley Reifler"; the fact that REFILER resided at the known address for the person sought in the Arrest Warrant; and the fact REFILER's appearance matched the appearance of the person sought in the Arrest Warrant, I believe that the "Bradley Carl Reifler" sought in the Arrest Warrant is the defendant, BRADLEY CARL REIFLER.

WHEREFORE, I respectfully request that BRADLEY CARL REIFLER, the defendant, be imprisoned or bailed as the case may be.

/s/
_____
KEITH NUSBAUM
United States Postal Inspector


Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this,

_____
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

3

# EXHIBIT A

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   1:20CR512-1 |
| BRADLEY CARL REIFLER | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

   **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   BRADLEY CARL REIFLER                                    ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint

☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:

Wire fraud in violation of 18:1343 and 2
Perjury in violation of 18:1621

*** The United States Attorney requests a detention hearing***
Indictment SEALED Pending Arrest of Defendant

Date:    12/02/2020                                  _____
                                                                          John S. Brubaker, Clerk
                                                                          *Issuing officer's signature*

City and state:    Greensboro, North Carolina        /s/ Jamie L. Sheets, Deputy Clerk
                                                                          *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                            _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____   Weight: _____

Sex: _____   Race: _____

Hair: _____   Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____



SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20CR5̲1̲2̲-1 |
| | : | |
| BRADLEY CARL REIFLER | : | |

The Grand Jury charges:

## General Allegations

At all times relevant to this Indictment:

### *Background on Insurance*

1.      Insurance is designed to protect consumers from financial loss resulting from unknown future events.   Typically, a consumer pays a fixed fee (a "premium") to an insurance company in exchange for an insurer's promise to pay future claims arising from a defined event, as set out in a policy.   To pay consumer claims, an insurance company may draw on premiums that it has invested or on assets it holds.   To ensure adequate reserves to pay future claims, North Carolina laws and regulations govern the number and quality of the investments and assets that an insurance company must hold, including by requiring investments in low-risk holdings such as government bonds.

2.      An insurance company may share its risk with another company through "reinsurance," whereby the insurance company cedes a portion of the

premiums earned on its policies along with the risk of paying claims on those policies to another company (the "reinsurer").   Any investments by a reinsurer are subject to the same North Carolina laws and regulations that govern the insurance companies themselves.

### Defendant, Relevant Individuals, and Relevant Entities

3.    Forefront Capital Holdings was a Delaware holding company for a group of financial-services companies (collectively, "Forefront") based in New York.   These companies included Forefront Capital Services, LLC; Forefront Partners, LLC; Forefront Capital Holdings, LLC; and Forefront Partners Short Term Notes, LLC.

4.    Defendant BRADLEY CARL REIFLER, a resident of New York, was the founder and Chief Executive Officer ("CEO") of Forefront and sole owner of Stamford Brook Capital, LLC ("Stamford Brook"), a limited-liability company based in New York.

5.    Reinsurance Company 1 was a special-purpose reinsurance company based in the Cayman Islands.   Individual A was the owner of Reinsurance Company 1.

6.    Life Insurance Company 1 was a life-insurance company based in Durham, North Carolina.

7.    Trust Entity 1 was a Nevada-chartered trust company.

2

8.     Real Estate Company 1 was a real-estate development company based in New York, of which BRADLEY CARL REIFLER was a one-third owner.

9.     Real Estate Company 2 was a real estate company based in New York that shared an office with Forefront.   Real Estate Company 2 was owned by Individual B.

10.    Forefront Income Trust ("FIT") was a management-investment company founded by BRADLEY CARL REIFLER.   FIT invested primarily in unrated loans, as well as loans and debt instruments that were rated below investment grade.

11.    Employee A was the office manager for Forefront, reporting directly to BRADLEY CARL REIFLER.

12.    Employee B was a managing director at Forefront.

### Overview of the Scheme to Defraud

13.    On or about April 23 and 24, 2015, Reinsurance Company 1 entered into a Reinsurance Trust Agreement and a Novation Agreement, pursuant to which Reinsurance Company 1 became the reinsurer for a block of Life Insurance Company 1's policies.   Reinsurance Company 1 thereby took control of approximately $34,194,634, which constituted the monies used to secure the life-insurance policies ("trust assets").   Pursuant to the

3

Reinsurance Trust Agreement, Reinsurance Company 1 was to deposit the trust assets into an account with Trust Entity 1 for the benefit of Life Insurance Company 1.

14.     On or about April 24, 2015, Stamford Brook entered into an Investment Advisory Agreement pursuant to which Stamford Brook was to serve as investment advisor for the trust assets.   That day, BRADLEY CARL REIFLER signed a letter addressed to the then-CEO of Life Insurance Company 1.   The letter stated, in relevant part, "Stamford is a [*sic*] wholly owned by me.   To date Stamford has no business and is being used as the investment advisor to [Reinsurance Company 1] in order to facilitate the anticipated potential future partnership arrangement between [Reinsurance Company 1], Forefront Capital Holdings, LLC . . ., and [Life Insurance Company 1]."   Employee B sent this letter, over email, to Reinsurance Company 1.

15.     To protect the $34 million in trust assets, certain restrictions were placed upon the uses of the trust assets; one such limitation was to restrict the use of the $34 million to "eligible investments."   Specifically, Exhibit C to the Reinsurance Trust Agreement and Schedule B of the Investment Advisory Agreement defined "Eligible Investments" as those "meet[ing] all the requirements of North Carolina's General Statute 58-7-173"; "hav[ing] an

4

average rating of a 2 or better based upon the ratings of the [National Association of Insurance Commissioner]'s Security Valuation Office . . ., or equivalent rating thereof"; and being "subject to certain concentration limitations prescribed by the North Carolina Insurance Code," among other requirements (collectively, the "investment requirements").

16.   Rather than investing the trust assets in qualifying "eligible assets," BRADLEY CARL REIFLER misappropriated the funds, using them for improper expenses such as repaying other investors and paying overhead expenses at Forefront, and investing them in high-risk, "junk," or self-dealing investments that violated the investment requirements.   BRADLEY CARL REIFLER made numerous false and misleading statements and representations, and caused others to make such statements, concerning the true use of Life Insurance Company 1's assets.

17.   In or around 2016, the North Carolina Department of Insurance ("NCDOI") performed a routine audit of Life Insurance Company 1's financials. At that time, Life Insurance Company 1 noticed inconsistencies in materials it received from Forefront in connection with the audit and commenced an internal investigation of the investments.

18.   BRADLEY CARL REIFLER, Employee A, and Employee B provided documentation, including promissory notes, agreements, and other

5

supporting documents, to Life Insurance Company 1 to establish the value and suitability of the trust-assets investments.   Unbeknownst to Life Insurance Company 1, the documentation provided to Life Insurance Company 1 was fabricated and intended to create the appearance that the investments complied with investment requirements.

19.   As a result of BRADLEY CARL REIFLER's fraudulent scheme, Life Insurance Company 1 was unable to recoup most of the trust assets; was instead left with low-grade, illiquid securities in their investment portfolio; suffered substantial financial losses; and was placed in rehabilitation.

### Purpose of the Scheme to Defraud

20.   The purpose of the scheme was for BRADLEY CARL REIFLER to enrich himself, his business entities, his accomplices, and others known and unknown to the Grand Jury by: (1) defrauding Life Insurance Company 1 of funds through materially false and fraudulent representations and omissions of material facts; (2) concealing his fraud through, among other means, additional false statements and destruction of documents; and (3) diverting trust assets to his personal use and benefit and the use and benefit of entities he controlled.

6

## The Scheme to Defraud

### *BRADLEY CARL REIFLER Misappropriated Assets and Diverted Assets to Impermissible Investments*

21.     The trust assets maintained by Trust Entity 1 were held in a Wells Fargo client-funds account ending in x0378 (hereinafter, the "Trust Account"). On or about April 28, 2015, approximately $29,194,634 was transferred to the Wells Fargo account from Reinsurance Company 1's predecessor, the previous reinsurer, which kept $5 million of the trust assets as a ceding commission. As agreed by the parties to the Investment Advisory Agreement and the Reinsurance Trust Agreement, Forefront was required to make up the $5 million differential as a condition of Forefront's role in investing the trust assets.   To satisfy this requirement, BRADLEY CARL REIFLER fraudulently diverted approximately $6 million from funds that Trust Entity 1 had given to BRADLEY CARL REIFLER for investment in Forefront Talking Capital, a telecom receivables investment.

22.     Prior to entering into the Investment Advisory Agreement, BRADLEY CARL REIFLER diverted approximately $1.75 million from the Trust Account to Real Estate Company 1 via two transfers in February and March 2015.   Later, when discussing the diversion of the Life Insurance Company 1 funds with a co-owner at Real Estate Company 1, BRADLEY CARL

7

REIFLER acknowledged: "So the problem was . . . that I did something very wrong in terms of that I sent money that I shouldn't have sent to [Real Estate Company 1] so it's coming back to bite me in the ass in a number of ways."

23.    On or about May 1, 2015, BRADLEY CARL REIFLER caused approximately $10 million to be transferred to Forefront Partners Short Term Notes.    From around May 2015 to around October 2015, BRADLEY CARL REIFLER fraudulently caused to be diverted at least $1.5 million from this account to Forefront Capital Services, a Forefront subsidiary whose primary purpose was to pay Forefront's operating expenses.

24.    On or about May 5, 2015, BRADLEY CARL REIFLER caused approximately $10 million to be transferred to FIT, which was not an "eligible investment" as defined by the investment requirements.

25.    In January 2016, BRADLEY CARL REIFLER caused to be transferred approximately $150,000 to the Forefront Partners account, where the funds were booked as a loan owed to BRADLEY CARL REIFLER on the general ledger.

26.    As a result of BRADLEY CARL REIFLER's fraudulent scheme, Life Insurance Company 1 recouped only a portion of the approximately $34 million that it entrusted to Forefront.    Due to its inability to pay out on claims by beneficiaries, Life Insurance Company 1 was placed in rehabilitation.

8

### *BRADLEY CARL REIFLER Concealed His Misappropriation*

27.    On or about June 26, 2015, Employee A sent Individual A an account statement that reflected a list of six investments, including investments of $10 million in FIT and $10 million in Forefront Partners, LLC ("Forefront Partners").

28.    Individual A informed BRADLEY CARL REIFLER that the investments listed on the June 2015 account statements did not meet the standards for "Eligible Investments" as defined in the Investment Advisory Agreement because, among other things, the investments violated the Agreement's requirements regarding limits on the amount of funds that could be placed in any one investment; were in entities affiliated with BRADLEY CARL REIFLER and Forefront; and constituted impermissible equity investments.   BRADLEY CARL REIFLER, and others acting at his direction, falsely represented to Individual A that Forefront would take steps to bring Forefront's investments into compliance with the Investment Advisory Agreement.

29.    On or about October 14, 2015, Employee A sent Individual A an updated statement, copying BRADLEY CARL REIFLER and Employee B. The statement no longer listed an investment in either FIT or Forefront Partners, instead listing numerous smaller investments.   In truth and in fact,

9

as BRADLEY CARL REIFLER then and there well knew, the statement transmitted to Individual A was fraudulent; the investments had yet to be replaced with assets consistent with investment requirements.

30.    In or around the first quarter of 2016, the NCDOI commenced a routine audit of Life Insurance Company 1's 2015 financials that uncovered irregularities underlying the purported investments made by BRADLEY CARL REIFLER.  As a result of these findings, in or around June 2016, Life Insurance Company 1 commenced a detailed audit of the investments of the trust assets.

31.    To assuage Life Insurance Company 1's concerns regarding the compliance of the investments of trust assets with the investment requirements, BRADLEY CARL REIFLER emailed or caused to be emailed false and fraudulent supporting documentation, including valuations, promissory notes, and agreements, to Reinsurance Company 1 and Life Insurance Company 1.

32.    In truth and in fact, as BRADLEY CARL REIFLER then and there well knew, many of the materials submitted to Reinsurance Company 1 and Life Insurance Company 1 were forged.  The fraudulent paperwork often contained signature pages from genuine agreements that the counterparties had entered into with Forefront or FIT that were fraudulently altered.  For

10

example, many of the notes provided to Life Insurance Company 1 listed limited-liability companies ("LLCs") purportedly owned by Individual B. These notes contained pledge agreements between the LLCs and the "[Reinsurance Company 1] [Life Insurance Company 1] Reassurance Trust." In truth and in fact, as BRADLEY CARL REIFLER then and there well knew, many of these LLCs did not exist, and, while Individual B had entered into agreements with Forefront-related entities such as Forefront Partners and FIT, he had not entered into a contract with the "[Reinsurance Company 1] [Life Insurance Company 1] Reassurance Trust."

33.   By in or around August 2016, Life Insurance Company 1 sought to liquidate the trust-asset investments.   On or about August 23, 2016, Life Insurance Company 1's CEO contacted BRADLEY CARL REIFLER and Employee B to request details on past-due loans.   BRADLEY CARL REIFLER attempted to divert blame to Reinsurance Company 1, responding that Life Insurance Company 1 should "contact . . . [Reinsurance Company 1] for these details" and that "[Reinsurance Company 1] has all the details on all the investments."

34.   BRADLEY CARL REIFLER falsely claimed that he had not served as investment advisor of the trust assets.   On or about September 1, 2016, BRADLEY CARL REIFLER caused a letter to be sent to Life Insurance

11

Company 1 insisting that "[t]he investment advisory agreement purportedly entered into between [Reinsurance Company 1] and Stamford Brook was never executed.   Any document that purports to show a signature on Stamford Brook's behalf if [*sic*] a forgery . . . .   It is and always has been a dormant company that never operated in any capacity."

35.   On or about September 10, 2016, BRADLEY CARL REIFLER filed a complaint with the Federal Bureau of Investigation Internet Crime Complaint Center.   The complaint stated, in relevant part, "My firm invested in [Reinsurance Company 1] so they could acquire the portfolio . . . . [Individual A] did not follow the North Carolina Statutes and in an effort to cover his mistakes presented a false portfolio and created documents that made Forefront liable for all of [Reinsurance Company 1]'s actions."

36.   On or about September 23, 2016, Life Insurance Company 1 filed a civil suit in the United States District Court for the Middle District of North Carolina against Stamford Brook, Forefront, Reinsurance Company 1, Trust Entity 1, BRADLEY CARL REIFLER, and Employee B, alleging, among other things, a fraudulent scheme that misused the trust assets in violation of the Reinsurance Trust Agreement and the Investment Advisory Agreement.

37.   On or about October 26, 2016, in connection with the Life Insurance Company 1 civil suit, BRADLEY CARL REIFLER filed a sworn

declaration stating, in relevant part, that trust-assets investments were "introduced by Forefront Partners and approved by [Individual A] at [Reinsurance Company 1]" and "[a]ll of the [Life Insurance Company 1] Funds were invested in debt instruments with varying maturity dates." These sworn statements were false, as BRADLEY CARL REIFLER then and there well knew, and concealed the diversion of trust assets to pay prior Forefront investors and Forefront operating expenses.

### BRADLEY CARL REIFLER Destroyed Evidence of His Involvement in the Investment Advisory Agreement

38. By in or around September 2016, BRADLEY CARL REIFLER sought to destroy evidence of his involvement in the Investment Advisory Agreement, sending a text message to a Forefront IT employee that stated, "I would like all deletes to be permanently deleted."

39. On or about January 20, 2017, BRADLEY CARL REIFLER filed a voluntary petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Southern District of New York. On or about May 1, 2017, Life Insurance Company 1 filed an adversary proceeding opposing the dischargeability of BRADLEY CARL REIFLER's debts.

40. On or about December 28, 2017, the bankruptcy judge ordered that BRADLEY CARL REIFLER produce electronic evidence to Life Insurance

13

Company 1 and provide access to his electronic devices to a third-party vendor hired by Life Insurance Company 1.

41.     In or around December 2017, BRADLEY CARL REIFLER again sought to destroy evidence of the Investment Advisory Agreement, searching how to delete emails and text messages; deleting electronic folders related to Life Insurance Company 1 and the Investment Advisory Agreement; and again telling the Forefront IT employee, over text message, that he "want[ed] to delete all emails from 2016 on[ ]back."

## COUNTS ONE THROUGH FOUR
### (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

42.     Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

43.     From at least in or around 2014 through at least in or around 2017, in the Middle District of North Carolina and elsewhere, BRADLEY CARL REIFLER, aided and abetted by others known and unknown to the Grand Jury, on or about the dates specified as to each count below, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false

14

and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose of the Scheme and Artifice to Defraud

44.    The Grand Jury realleges and incorporates by reference paragraph 20 of this Indictment as though fully set forth herein as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice to Defraud

45.    The Grand Jury realleges and incorporates by reference paragraphs 13 through 19 of this Indictment as though fully set forth herein as a description of the scheme and artifice.

### Use of the Wires

46.    On the dates specified as to each count below, BRADLEY CARL REIFLER, in the Middle District of North Carolina and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, as set forth below:

15

| Count | Approximate Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 1 | August 12, 2016 | Email from Employee A, copying REIFLER, from outside the Middle District of North Carolina to Life Insurance Company 1 CEO and internal auditor within the Middle District of North Carolina attaching a fraudulent pledge agreement. |
| 2 | August 18, 2016 | Email from Individual A from outside the Middle District of North Carolina to Life Insurance Company 1 CEO and internal auditor forwarding fraudulent documents that he received from Employee A. |
| 3 | August 23, 2016 | Email from REIFLER from outside the Middle District of North Carolina to Life Insurance Company 1 CEO within the Middle District of North Carolina.   In response to questions about the assets underlying the trust agreement, REIFLER stated, "[Reinsurance Company 1] has all the details on all the investments." |
| 4 | August 24, 2016 | Email from REIFLER from outside the Middle District of North Carolina to Life Insurance Company 1 CEO within the Middle District of North Carolina.   REIFLER stated, "Forefront and its related entities is not the advisor to Port Royal and the only relationship has been to introduce opportunities." |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE
### (18 U.S.C. § 1621 – Perjury Generally)

47.    Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

48.    On or about October 26, 2016, in the Middle District of North

16

Carolina and elsewhere, BRADLEY CARL REIFLER, in a declaration under penalty of perjury filed with the U.S. District Court for the Middle District of North Carolina, did willfully subscribe as true a material matter that he did not believe to be true, that is, the statements set out in paragraph 37, to wit, that all of the Life Insurance Company 1's funds had been invested when, in fact, a portion of the funds had been diverted for use by BRADLEY CARL REIFLER and Forefront.

In violation of Title 18, United States Code, Section 1621.

## FORFEITURE ALLEGATION

49.    The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

50.    Upon conviction of one or more of the offenses charged in Counts One through Four of this Indictment, the defendant, BRADLEY CARL REIFLER, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

51.    The property to be forfeited may include the following a money judgment in an amount to be determined, representing the value of the property subject to forfeiture as a result of each such offense.

52.    If any of the property described above as being subject to forfeiture as a result of any act or omission of the defendants cannot be located upon the exercise of due diligence, has been transferred or sold to or deposited with a third person, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

18

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Rule 32.2, Federal Rules of Criminal Procedure, and Title 28, United States Code, Section 2461(c).

DATED:   November 30, 2020

MATTHEW G. T. MARTIN
United States Attorney

BY: MEREDITH C. RUGGLES
Assistant United States Attorney

DANIEL S. KAHN
Acting Chief, Fraud Section
United States Department of Justice
Criminal Division

BY: MICHELLE PASCUCCI

BY: DREW BRADYLYONS

BY: JESSEE ALEXANDER-HOEPPNER

Trial Attorneys, Fraud Section

A TRUE BILL:

FOREPERSON

19